NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


MARIA ANDREAUS and RONALD              )
ANDREAUS, her husband,                 )
                                       )
    Appellants,                        )
                                       )
v.                                     )    Case No. 2D14-1688
                                       )
IMPACT PEST MANAGEMENT, INC.,          )
and REGATTA BEACH CLUB                 )
CONDOMINIUM ASSOCIATION, INC.,         )
                                       )
    Appellees.                         )
_____)

Opinion filed February 6, 2015.

Appeal from the Circuit Court for Pinellas
County; Bruce Boyer, Judge.

Maureen M. Deskins of Knopik Deskins
Law Group, Tampa, for Appellants.

Amy L. Baker and Vance R. Dawson of
Rissman, Barrett, Hurt, Donahue & McLain,
P.A., Orlando, for Appellee Impact Pest
Management, Inc.

No appearance for Appellee Regatta Beach
Club Condominium Association, Inc.


KHOUZAM, Judge.

Maria and Ronald Andreaus appeal the final judgment entered in favor of Impact Pest Management, Inc., and Regatta Beach Club Condominium Association. We reverse.

I.    BACKGROUND

Ms. Andreaus suffered injuries when she slipped and fell as she exited an elevator at the Regatta Condominiums. She and her husband sued the Condominium Association and Impact Pest, claiming that she had slipped on pesticide that had been sprayed on the tile floor outside the elevator.

Before trial, the Andreauses filed a motion in limine to exclude as inadmissible hearsay any mention in Ms. Andreaus's medical records that she slipped on spilled water. The medical records contained statements to that effect, but the source of those statements was unknown. There was no witness that could be called at trial to testify about who made the statements. There was no indication that the statements were attributable to Ms. Andreaus, and she denied making them. The trial court correctly ruled that the statements were inadmissible and granted the motion. The Andreauses' counsel reviewed approximately 1500 pages of medical records and made redactions consistent with the court's ruling. The redacted medical records were admitted into evidence at trial.

The trial came to a close late on a Friday. Shortly before concluding his closing argument, counsel for Impact Pest—Mr. Vance R. Dawson—suggested that the evidence the Andreauses had presented was "in many respects . . . untruthful" and then asked if he could approach the bench. Outside the hearing of the jury, Mr. Dawson asked the court if he could comment on a portion of Ms. Andreaus's medical records as

redacted.  Apparently, two references to a "spill" and a reference to a "spilling of water" had been missed by the Andreauses' counsel and had not been redacted.  Counsel for the Andreauses was completely unaware of the mistake, and no competent evidence had been introduced to suggest the presence of any substance other than pesticide.

Counsel for the Andreauses explained to the court that the incomplete redaction was a clerical error, objected to any comment on the mention of a spill or water because the references had previously been ruled inadmissible hearsay, and requested to further redact the medical records before they were published to the jury.  Mr. Dawson did not ask the court to revisit its previous ruling on the admissibility of the references.  Instead, he asserted that he should be able to comment on the records as redacted because the Andreauses had already admitted them into evidence.  Inexplicably, the trial court agreed with Mr. Dawson and ruled that because the records had already been admitted into evidence, the Andreauses could not remove the reference before the records were published to the jury: "It's in evidence, and you have to live with it," the court concluded.

Mr. Dawson commented on the hearsay references as follows:

> Anyhow, what I wanted to bring to your attention is that in the medical records of the hospital where Ms. Andreaus went when she was transported from the accident scene, there was a history and physical prepared.  And, of course, a history and physical takes in information with regard to who it is, what it is, and what happened.

> And the history of present illness indicated this is a 71-year-old caucasian woman, a patient of Dr. Gary Goldstein, who was in her usual state of health until yesterday when she was getting out of the elevator and found that there was a—redaction—spilled on the floor.

So the medical records demonstrate that there was actually a spill on the floor. And, yet, the Plaintiffs' contention is that this was something that was intentionally sprayed. So you can take into consideration the characterization of what Ms. Andreaus said on the date of the accident with respect to what "it" was. But certainly a spill is not a spray.

That, incidentally, is found in 19-A. So if you get to that far, after your consideration with respect to liability, you may want to take a gander at that if you so choose.

. . . .

On a similar note, if you look at Exhibit 25-A, this also contains a hospital course, and from Morton Plant Hospital. And the hospital course says here that the patient is a 71-year-old woman who has slipped and fell over a puddle of water. This is the information that the hospital recorded upon Ms. Andreaus' admission on November 30, 2011.

On rebuttal, counsel for the Andreauses attempted to dispel the prejudicial impact of Mr. Dawson's argument:

I'll talk to you quickly about the citations in the medical records that Mr. Dawson just referred to. There's a reason why you're hearing about those for the first time now, and that's because nobody knows where it came from. . . .

It's because no one knows where those statements came from. The records don't say that Ms. Andreaus made that statement. There is no doctor, no health care provider, no nurse to say exactly how that information got in the records. They don't know if it came from an ambulance driver. They don't know if it was simply a mistake. They don't know where the information came from. And the records do not say that Ms. Andreaus said this. It is improper for Mr. Dawson to suggest to you what he thinks happened when that recording was made. We just don't know. And if we did know, you would have heard from a witness. That's why you're hearing about it for the first time now.

The medical records went to the jury with the incomplete redaction, and the jury returned a verdict in favor of the defendants.

II.     ANALYSIS

There is no question that the trial court abused its discretion in allowing this inadmissible evidence to go to the jury and that the error was extremely prejudicial to the Andreauses' case. It is even more troubling to us that counsel requested to introduce inadmissible evidence under these circumstances.

The statements about the cause of the fall—the source of which was unknown and which Ms. Andreaus denied making—were inadmissible hearsay. See Visconti v. Hollywood Rental Serv., 580 So. 2d 197, 198 (Fla. 4th DCA 1991) ("[S]tatements which relate to cause of the fall are not statements made for the purpose of medical diagnosis or treatment and are, therefore, not admissible under section 90.803(4)[, Florida Statutes (1990)]."). This is undisputed. The fact that the Andreauses' counsel mistakenly introduced the references did not change the fact that they were inadmissible hearsay, and there was never any argument that they were admissible for any reason other than they had been mistakenly left in the record.

Moreover, the admission of these statements was devastating to the Andreauses' case. No proper evidence had been introduced at trial suggesting the presence of any substance except pesticide. In other words, up until the inadmissible evidence was published, the question for the jury was whether Ms. Andreaus had slipped on pesticide that had been sprayed on the floor or whether no substance had caused her to slip. The inadmissible evidence inappropriately inserted another possible cause—spilled water—into the central query of the case. And even worse, immediately

prior to commenting on these inadmissible references, Mr. Dawson suggested to the jury that the Andreauses had been lying to them throughout the entire trial. In doing so, he implied that the Andreauses had been hiding the true cause of the accident— water—from the jury when in fact there was no proper evidence at all that a puddle of water could have caused the fall.

The failure to redact these references was a clerical error that could have easily been corrected before the jury's mind was tainted by the inadmissible references. See Bradley v. Brotman, 836 So. 2d 1129, 1133, 1136 (Fla. 4th DCA 2003) (determining that the trial court abused its discretion in refusing to excise an improperly admitted note from evidence before the note was revealed to the jury: "the court could have easily prevented the prejudice and cured any potential error by excising the [inappropriate] reference . . . in the record" because "[t]he jury had not seen the notes. Therefore, the jury's mind was not as yet 'tainted' by this evidence"). But instead of drawing the court's attention to the error so that it could be corrected, Mr. Dawson capitalized on the error and compounded it by commenting on it and allowing the incomplete redaction to go to the jury. The trial court should not have rewarded this "gotcha" tactic, and we will not do so here. See Salcedo v. Asociacion Cubana, Inc., 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979) ("[T]he courts will not allow the practice of the 'Catch-22' or 'gotcha!' school of litigation to succeed."); see also Harley v. Lopez, 784 So. 2d 447, 448 (Fla. 3d DCA 1999) (refusing to reward "gotcha" tactics, which have been "long abhorred by this court"); M-5 Commc'ns, Inc. v. ITA Telecomms, Inc., 708 So. 2d 1039, 1039 (Fla. 3d DCA 1998) ("[R]eversal is . . . mandated by an

application of the anti-gotcha rule in its original and purest form.").[1]  Accordingly, we reverse and remand for a new trial.

Reversed and remanded for a new trial.

KELLY and SLEET, JJ., Concur.

---

[1]We also note that lawyers, as officers of the court, have a special duty "to avoid conduct that undermines the integrity of the adjudicative process."  R. Regulating Fla. Bar 4-3.3 cmt.  The Oath of Admission to The Florida Bar obligates attorneys to respect the court as well as act with fairness and integrity toward opposing parties and their counsel at all times.  See Oath of Admission to The Fla. Bar ("I will maintain the respect due to courts of justice and judicial officers . . . .  To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications."); see also R. Regulating Fla. Bar 4-3.3 (addressing candor toward the tribunal); 4-3.4 (addressing fairness to opposing party and counsel).  Further, The Florida Bar's Creed of Professionalism makes clear that lawyers should be guided by a sense of fair play and never allow their silence to mislead anyone.  Fla. Bar Creed of Prof'lism ("I will strictly adhere to the spirit as well as the letter of my profession's code of ethics, to the extent that the law permits and will at all times be guided by a fundamental sense of honor, integrity, and fair play. . . .  I will not knowingly misstate, distort, or improperly exaggerate any fact or opinion and will not improperly permit my silence or inaction to mislead anyone.").