NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

U.S. BANK NATIONAL ASSOCIATION,   )
as Trustee for J.P. Morgan Mortgage   )
Acquisition Corp. 2005-WMC1, Asset   )
Backed Pass-Through Certificates,   )
Series 2005-WMC1,   )
   )
       Appellant,   )
   )
v.   )       Case No.  2D14-4898
   )
MARIO RIOS; CARMEN RIOS;   )
MORTGAGE ELECTRONIC   )
REGISTRATION SYSTEMS, INC.;   )
COLFIN, AI-FL2, LLC,   )
   )
       Appellees.   )
   )

Opinion filed June 10, 2015.

Appeal pursuant to Fla. R. App. P.
9.130 from the Circuit Court for Pasco
County; Sherwood S. Coleman, Judge.

Benjamin B. Brown and Christen Spake,
of Quarles & Brady, LLP, Naples, for
Appellant.

David B. Singer and Matt Newton (filed
notice of appearance after briefing) of Singer
& O'Donniley, P.A., Tampa, for Appellee,
Colfin AI-FL2, LLC.

Jeffrey C. Hakanson of McIntyre Thanasides
Bringgold Elliott Grimaldi & Guito P.A., of
Tampa, for Appellees, Mario and Carmen
Rios.

No appearance for Mortgage Electronic
Registration Systems, Inc.

WALLACE, Judge.

U.S. Bank, the mortgagee, appeals a nonfinal order entered after a final judgment of foreclosure setting aside a foreclosure sale on the motion of a third-party purchaser, Colfin AI-FL2, LLC (Colfin). Because the trial court's finding that U.S. Bank had entered into a stipulation not to oppose the granting of Colfin's motion is not supported by competent, substantial evidence and because Colfin failed to establish grounds for setting aside the foreclosure sale, we reverse the trial court's order.

## I. THE FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 7, 2013, U.S. Bank obtained a consent final judgment of foreclosure in the amount of $396,567.25 against Mario Rios and Carmen Rios following their default on a note and mortgage held by the bank. The mortgaged property, which was located in Pasco County, had been the subject of a sinkhole claim during the pendency of the proceedings. Notably, the final judgment provided that "[t]he sinkhole insurance claims proceeds associated with the subject property shall remain in the Court Registry until further order of this Court." (Emphasis added.)

On June 3, 2013, Colfin purchased the property at the foreclosure sale for $172,500. The clerk of the court retained the proceeds of the sale "for distribution in accordance with the order or final judgment or law" and issued a certificate of title to Colfin on June 14, 2013.

On the same day that the clerk conducted the foreclosure sale, a person or persons unknown recorded an Executive Claim Report for Subsidence Investigations

- 2 -

in the Public Records of Pasco County. The report was prepared by SDII Global Corporation. In the report, SDII gave notice of sinkhole activity on the subject property based upon testing performed between August 4 and August 20, 2010. SDII recommended that the sinkhole conditions be remediated with "compaction grout injection to increase the density of the soils and cap the limestone." SDII also advised that the remediation program should be monitored to verify compliance with the report's recommendations. SDII estimated the cost of the recommended remediation at $62,890.

Four months later, on October 3, 2013, Colfin filed a Motion to Set Aside and Rescind Foreclosure Sale Based upon Fraud, Misrepresentation, Non-Disclosure and Failure to Timely Comply with Florida Statute § 627.7073.[1] Colfin filed an amended motion on October 29, 2013. In its amended motion, Colfin alleged that if it had been aware that the subject property was affected by sinkhole activity it would never have bid on the property. Colfin pointed out that three years had passed between the time of the testing in 2010 and the filing of the Executive Claim Report in 2013 and that the reason for the delay was unknown. Colfin concluded that the failure to disclose the existence of the sinkhole activity in accordance with section 627.7073 constituted fraud and that as a result of the fraud and inequity against Colfin, the court should set aside the sale.

U.S. Bank filed a response in opposition to Colfin's motion to set aside the sale. The bank argued that Colfin had failed to plead valid grounds to set aside the

---

[1]The statute is included in the title of the pleading filed by Colfin without designating the applicable year. Presumably, the correct year of the statute, if it were applicable, would be 2010 based on the date that SDII performed its testing, which is the earliest date that the obligation to file the report may have arisen.

foreclosure sale. It asserted that Colfin's reliance on section 627.7073 to establish fraud was misplaced. In addition, U.S. Bank argued that Colfin had purchased the property "as is" at the foreclosure sale and that the doctrine of caveat emptor applied regarding issues related to the property itself, such as the sinkhole activity. U.S. Bank also argued that Colfin had failed to adequately plead fraud. Specifically, Colfin failed to state who had allegedly committed the fraud or how, and it failed to allege any false representation. Furthermore, U.S. Bank pointed out that Colfin's motion was untimely. Finally, the bank asserted that Colfin was on notice of the sinkhole activity because the records in the underlying action to foreclose the mortgage and in the Official Records of Pasco County disclosed the existence of the sinkhole. In particular, the final judgment of foreclosure that established the amount due and authorized the clerk to sell the property disclosed the existence of sinkhole activity on the property.

In January 2014, the trial court held a hearing on the motion to set aside the foreclosure sale. At that hearing, Colfin's counsel, Gregory Sanoba, argued the grounds that Colfin had alleged in its motion to set aside the sale. In addition, Mr. Sanoba represented that U.S. Bank's co-counsel, Melissa Giasi, first alerted Colfin to the existence of the sinkhole on the property on September 19, 2013. Through telephone discussions, e-mails, and texts, Ms. Giasi had proposed that if Colfin would grant U.S. Bank access to the property, the bank would not object to Colfin's motion to set aside the foreclosure sale. According to Mr. Sanoba, he and Ms. Giasi reached a stipulation regarding these particulars. In support of its claims about the alleged stipulation, Colfin filed the affidavits of Mr. Sanoba and his legal assistant. In summary, Colfin concluded that it had established grounds to set aside the sale based on the

asserted fraud, equitable claims, and the alleged stipulation of the parties, including U.S. Bank's agreement that it would not oppose Colfin's motion.

U.S. Bank disputed that it had ever agreed that it would not oppose the motion to set aside the sale, noting the absence of a signed agreement. In support of its position that no agreement had been reached, U.S. Bank filed the affidavit of its co-counsel, Ms. Giasi. U.S. Bank also opposed the motion for the various reasons argued in its response.

At the conclusion of the hearing, the trial court announced that it was not ready to rule on Colfin's various claims because the issue of the alleged agreement had not been set out in the amended motion and had only been presented through argument and the various affidavits that had been filed. Accordingly, the trial court directed the parties to set an additional hearing to present evidence about the existence of any agreement between the parties and to address the legal issues regarding the enforcement of any agreement that may have been reached.

Seven months later, in August, the parties presented evidence and argument concerning the alleged agreement to the trial court. In pertinent part, Mr. Sanoba testified that Colfin first learned about the sinkhole activity on the subject property on September 19, 2013, during a telephone call with Ms. Giasi. Although Colfin had performed a title search before purchasing the property, the claim report had not been recorded in the public records when Colfin performed its search. Thus Colfin

did not discover the existence of sinkhole activity on the property before purchasing the property at the foreclosure sale.[2]

After Colfin notified Mr. Sanoba of the situation, he called Ms. Giasi and told her that Colfin would be seeking to set aside the sale based upon the timing of the recordation of the report. He stated that over the course of several telephone calls and e-mails, counsel reached an understanding that Mr. Sanoba would file a motion to set aside the sale and Ms. Giasi would not raise any objections to the motion. In return, Colfin would cooperate with Ms. Giasi and grant her and her appraiser access to the property. Mr. Sanoba would wait to file his motion to set the sale aside until after U.S. Bank's hearing regarding the recovery of the insurance proceeds from the sinkhole claim. The only essential term of the agreement to be performed by Colfin was that it allow access to the property; Mr. Sanoba provided Ms. Giasi with the name and telephone number of the person who would be able to provide her with access, Mary Delgado.

Ms. Giasi first proposed the alleged agreement in an e-mail on September 20, 2013, in which she stated:

> My suggestion is to let me have access, get the insurance monies and then I won't oppose your motion to vacate the certificate of title/foreclosure sale. I think that would be a good result for all parties. I just don't want to vacate the [certificate of title] and give rise to any claim by the Rios[es] to the monies. Let me know your thoughts. I'll call you a little later.
>
> Sent from my iPhone.

---

[2]Presumably, Colfin's title search disclosed the final judgment of foreclosure. Anyone who actually read the final judgment would know that there was sinkhole activity on the property.

Mr. Sanoba sent Ms. Giasi an email on September 21 providing her with the contact information for Mary Delgado. Mr. Sanoba responded to Ms. Giasi by e-mail on September 23, stating:

> Good Morning—did you and your appraiser get access to the property?
>
> I am refraining from filing my motion to set aside the sale until after your hearing.
>
> I do not want my motion to interfere with your hearing. Once your hearing has been held, I will file my motion to set aside the sale.
>
> You have agreed not to raise any objection to my motion to set aside the sale.

Ms. Giasi never notified Mr. Sanoba that the foregoing representation was not an accurate statement of their discussions, and she never informed him that she had been unable to obtain access to the property. Mr. Sanoba also offered speculative testimony about his understanding that when he was dealing with Ms. Giasi he was "dealing directly with the bank and that the bank had approved this agreement."

Ms. Giasi acknowledged sending the September 20 e-mail, which she considered to be nothing more than proposed terms for discussion. She stated that after she sent the e-mail, she had a telephone call with Mr. Sanoba in which they discussed the proposal. After the call, her understanding was that she would be given access to the property, get an appraisal, go forward with a deficiency hearing on behalf of U.S. Bank, and obtain an award of the insurance proceeds for the bank. U.S. Bank wanted to have its deficiency hearing and to collect the insurance proceeds for the sinkhole claim before Colfin tried to have the sale set aside. Ms. Giasi stated that the

bank would need to receive the insurance proceeds before Colfin's amended motion to set aside the foreclosure sale was heard.

Ms. Giasi stated that she did not consent to vacating the sale; instead, she consented to not opposing the motion to vacate. But, she claimed, she and Mr. Sanoba never actually reached an agreement on behalf of their respective clients. Ms. Giasi also testified that in stating that she would not object to the motion, she assumed that Colfin would still have to establish legal grounds to vacate the sale. Notably, Ms. Giasi testified that she never had any communications with any representative of U.S. Bank about the motion to set aside the foreclosure sale. No one from U.S. Bank ever told her to raise an objection to the motion.

Following the hearing, the parties submitted memoranda of law in lieu of closing arguments. The trial court issued an order granting the motion to set aside the foreclosure sale on September 15, 2014. In its order, the trial court found clear evidence of a stipulation between Mr. Sanoba and Ms. Giasi barring any objection by U.S. Bank to setting aside the foreclosure sale. The court concluded that "[t]herefore, without opposition, the motion seeking to vacate the sale filed by Colfin is due to be [granted.]" This appeal followed.

## II. FRAMING THE ISSUES

To resolve this case, we are called upon to decide two main issues. The first issue is whether the parties reached an enforceable agreement whereby U.S. Bank was precluded from opposing Colfin's motion to set aside the foreclosure sale. The second issue that we must decide is whether Colfin established a factual basis and

legal grounds that would authorize the trial court to exercise its discretion to set aside the foreclosure sale.

## III.  THE STANDARDS OF REVIEW

Our consideration of this case requires us to apply several different standards of review.  Generally speaking, we defer to a trial court's order setting aside a foreclosure sale and review such a decision for abuse of discretion.  Skelton v. Lyons, 157 So. 3d 471, 473 (Fla. 2d DCA 2015).  However, the trial court's order in this case is based—at least in part—on findings of fact and legal conclusions regarding an alleged agreement between the parties.  We defer to the circuit court's findings of fact when they are based on competent, substantial evidence.  State, Fla. Highway Patrol v. Forfeiture of Twenty Nine Thousand Nine Hundred & Eighty (29,890) in U.S. Currency, 802 So. 2d 1171, 1172 (Fla. 3d DCA 2001).  However, we are not required "to disregard record evidence that disproves the lower court's findings or that reveals its ruling to be an abuse of discretion."  In re Doe, 932 So. 2d 278, 284 (Fla. 2d DCA 2005).  "[A] decision interpreting a contract presents an issue of law that is reviewable by the de novo standard of review."  Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So. 2d 627, 630 (Fla. 1st DCA 1999).

## IV.  DISCUSSION

### A.  Procedural Stipulation or Settlement Agreement?

The parties' disagreement about whether they had reached an enforceable agreement that would preclude U.S. Bank from objecting to the foreclosure sale presents us with two alternative analytical approaches.  U.S. Bank argues that the existence of the alleged agreement must be considered in the light of the requirements

for an enforceable settlement agreement. On the other hand, Colfin contends that the alleged agreement was a procedural stipulation that should be measured against the requirements of Florida Rule of Judicial Administration 2.505(d) concerning stipulations.

We lean to the view that to the extent that the parties were negotiating an agreement that would preclude U.S. Bank from opposing Colfin's motion to set aside the foreclosure sale, such an agreement would constitute a settlement of the substantive rights of the parties. Although there was no litigation pending between U.S. Bank and Colfin at the time of the alleged agreement, the parties would have anticipated that Colfin would be seeking to set aside the foreclosure sale on the ground that it was fraudulent and on equitable grounds, which U.S. Bank would naturally oppose. Granted, the purported agreement only called for U.S. Bank to not oppose Colfin's motion, instead of an unequivocal agreement to set aside the sale. Nevertheless, the likely effect of the alleged agreement would be that the motion would be granted, title to the property would revest in the borrowers, and Colfin would obtain the return of the $172,500 that it had paid for the property.[3] Accordingly, the effect of the purported agreement was to resolve Colfin's right to rescind the sale and to receive the return of its purchase money.

On the other hand, it is arguable that the alleged agreement addressed matters that were largely procedural in nature. As noted above, Ms. Giasi understood that she was agreeing merely to not oppose the motion to set aside the sale and that Colfin would still be required to establish a factual basis and legal grounds to set aside

---

[3]Questions that remained to be resolved included who would bear the cost of advertising the sale, the clerk's fees, the documentary stamp tax paid on the bid amount, and similar expenses.

the sale. Thus, the setting aside of the sale might not be a foregone conclusion under the alleged agreement and the agreement addressed matters that were more procedural than they were substantive.

The debate about the nature of the purported agreement raises a close question, but we resolve it as follows: Whether one looks at the parties' arrangement as an attempt to settle their substantive rights or as an attempt to reach a binding stipulation regarding procedural matters, we conclude that the alleged agreement was not enforceable. In the next two sections of this opinion, we will explain why this is so.

*(1) No enforceable settlement agreement.* If one takes the view that the purported agreement involved a settlement of the substantive rights of the parties, then there was no agreement because Colfin failed to establish that U.S. Bank had authorized its counsel to enter into the settlement. "A party seeking to enforce a settlement agreement bears the burden of showing that an attorney for the opposing party had the clear and unequivocal authority to settle on the client's behalf"; Florida courts "have been very stringent in what they find to be a 'clear and unequivocal' grant of authority." Architectural Network, Inc. v. Gulf Bay Land Holdings II, Ltd., 989 So. 2d 662, 663 (Fla. 2d DCA 2008) (citing Architectural Network, Inc. v. Gulf Bay Land Holdings II, Ltd., 933 So. 3d 732, 733 (Fla. 2d DCA 2006), and Weitzman v. Bergman, 555 So. 2d 448, 449 (Fla. 4th DCA 1990)).

Here, Mr. Sanoba testified to his understanding that when he was dealing with Ms. Giasi he was "dealing directly with the bank and that the bank had approved this agreement." However, he did not testify that he had any personal knowledge of that claim, and Ms. Giasi testified that she never discussed Mr. Sanoba's motion with U.S.

- 11 -

Bank. Moreover, Colfin did not call any representative of the bank to support its claims. In our view, this evidence is insufficient to establish that Ms. Giasi had clear and unequivocal authority to enter into an agreement with Mr. Sanoba that she would not object to the motion to set aside the sale. In fact, the undisputed evidence supports the opposite conclusion. There was no competent, substantial evidence before the trial court to support a finding that the parties reached an enforceable settlement regarding the disposition of Colfin's motion.

(2) *No enforceable stipulation*. Alternatively, if one takes the view that the proposed arrangement was a stipulation governing the procedure to be followed with regard to the consideration and disposition of the motion to set aside the sale, then there was no enforceable stipulation either. The e-mails do not establish the parties' agreement to all of the terms proposed. Ms. Giasi testified that her September 20, 2013, e-mail was merely an invitation to discuss her proposed terms, and Mr. Sanoba's "response" to that e-mail did not fully set forth the terms as proposed by Ms. Giasi nor establish her consent to the amended terms in his response. In order to be enforceable, a stipulation must be clear and unambiguous. See Troup v. Bird, 53 So. 2d 717, 721 (Fla. 1951); Dean v. Dean, 592 So. 2d 781, 782 n.1 (Fla. 4th DCA 1992). Furthermore, Ms. Giasi never responded to indicate her acceptance or agreement to the terms outlined in Mr. Sanoba's e-mail of September 23, 2013. A stipulation cannot be effected by silence or acquiescence. Walter E. Heller & Co., Se. v. Pointe Sanibel Dev. Corp., 392 So. 2d 306, 308 (Fla. 3d DCA 1980).

Based on the foregoing analysis, we conclude that U.S. Bank was not precluded from opposing Colfin's motion to set aside the foreclosure sale. We now turn

- 12 -

to the question of whether Colfin established any valid grounds that would authorize the trial court to exercise its discretion to set aside the foreclosure sale.

## B. Failure to Establish Valid Grounds to Set Aside Sale

Colfin alleged in its motion to set aside the foreclosure sale that a fraud was committed against it because the Executive Claim Report for Subsidence Investigations, which provided notice of sinkhole activity on the subject property based upon testing performed between August 4, and August 20, 2010, was not recorded in the public records until the day of the foreclosure sale. And, according to Mr. Sanoba's testimony, Colfin had performed a title search on the property before the sale which did not reveal the existence of the sinkhole because the report had not been recorded. Colfin alleged that it was unknown why there was a three-year delay in recording the report as required by section 627.7073(2)(a), or who was responsible for the failure to timely record the report. In any event, Colfin concluded that the failure to record the report and the resulting lack of notice to it constituted fraud. Colfin argued that the motion to set aside the sale should be granted as a result of the fraud and on equitable grounds. We disagree.

"A purchaser of property at a judicial sale is generally subject to the rule of caveat emptor." CCC Props., Inc. v. Kane, 582 So. 2d 159, 161 (Fla. 4th DCA 1991). "[A] purchaser takes title subject to defects, liens, incumbrances, and all matters of which he has notice, or of which he could obtain knowledge in the exercise of ordinary prudence and caution." Cape Sable Corp. v. McClurg, 74 So. 2d 883, 885 (Fla. 1954) (emphasis added). Further, although section 45.031(5), Florida Statutes (2013), provides for the filing of objections to a judicial sale within ten days, "the substance of

an objection to a foreclosure sale under section 45.031(5) <u>must be directed toward conduct that occurred at, or which related to, the foreclosure sale itself</u>." <u>Skelton</u>, 157 So. 3d at 473 (emphasis added) (quoting <u>Indymac Fed. Bank FSB v. Hagan</u>, 104 So. 3d 1232, 1236 (Fla. 3d DCA 2012)); <u>see also</u> <u>In re Catalano</u>, 510 B.R. 654, 659 (Bankr. M.D. Fla. 2014) (applying Florida law). "The purpose of allowing an objection to a foreclosure sale 'is to afford a mechanism to assure all parties and bidders to the sale that there is no irregularity at the auction or any collusive bidding, etc.' " <u>Catalano</u>, 510 B.R. at 659 (quoting <u>Emanuel v. Bankers Trust Co., N.A.</u>, 655 So. 2d 247, 250 (Fla. 3d DCA 1995)).

Here, as argued by U.S. Bank, Colfin had notice of the sinkhole activity on the property from the final judgment of foreclosure, which expressly noted the existence of the sinkhole on the property. Colfin must have obtained or had access to a copy of the final judgment of foreclosure before it decided to bid a very substantial amount of money on the property at the foreclosure sale. Colfin could easily and should have discovered the existence of the sinkhole in the exercise of ordinary prudence and caution by merely reading the final judgment of foreclosure before purchasing the property.[4]

Moreover, in our view Colfin has failed to plead or establish a basis to set aside the sale for fraud.

---

[4]It is worth noting that Colfin was not a novice in the purchase of real estate at foreclosure sales. On the contrary, evidence presented at the hearing established that Colfin is a member of a family of investment companies that purchase residential real estate throughout the United States. Colfin is in the business of buying residential real estate, rehabilitating it, and renting the property to tenants. Colfin is active in bidding at foreclosure sales as a third-party bidder.

> In order to allege a viable cause of action for fraudulent inducement a plaintiff must allege that: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment.

Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. 5th DCA 2004).  As noted above, Colfin essentially acknowledged that the perpetrator of the alleged fraud was unknown and failed to allege that someone made a false statement to Colfin regarding a material fact, which was known to be false when it was made, with the intention that Colfin rely on that false statement, and that Colfin did so rely.

Further, as argued by U.S. Bank, Colfin's reliance on section 627.7073 to establish any sort of fraud or impropriety is misplaced.  Section 627.7073(2)(a) provides in pertinent part that:

> Any insurer that has paid a claim for a sinkhole loss shall file a copy of the report and certification, prepared [by a professional engineer or geologist upon the completion of testing for a sinkhole loss], including the legal description of the real property and the name of the property owner, with the county clerk of court, who shall record the report and certification.

(Emphasis added.)  Here, the record reflects that the insurance proceeds for the sinkhole claim had not yet been paid, and thus the insurer's obligation to file the report and certification had not yet arisen at the time of the foreclosure sale.  Moreover, Colfin does not allege that it was defrauded in its purchase of the subject property by the insurance company insuring the property.  Section 627.7073(2) further provides that

> (a) . . . The recording of the report and certification does not

- 15 -

. . . .

      2.  Create any cause of action or liability against any grantor of the real property for breach of any warranty of good title or warranty against encumbrances . . . .

. . . .

      (b) The seller of real property upon which a sinkhole claim has been made <u>by the seller and paid by the insurer</u> shall disclose to the buyer of such property that a claim has been paid and whether or not the full amount of the proceeds were used to repair the sinkhole damage.

(Emphasis added.)  Colfin has not established that the foregoing provisions apply in the context of the underlying foreclosure sale in which the "seller" is not the person who made a sinkhole claim and has been paid by the insurer.

Moreover, the result for which Colfin contends would render almost any foreclosure sale subject to being set aside if the physical condition of the property purchased did not meet the successful bidder's expectations.  We decline to approve such a result.  Like other judicial sales, the sale of the property conducted by the clerk of the circuit court at the trial court's direction was subject to the rule of caveat emptor.  At the foreclosure sale, Colfin purchased the property "as is."  It cannot seek to set aside the result of the foreclosure sale after the fact based upon complaints about the physical condition of the property.  See <u>Archer v. Levy</u>, 543 So. 2d 863 (Fla. 3d DCA 1989) (reversing a final judgment requiring a property owner to deed a six-foot strip of land to the owner of adjacent land purchased at a public auction, noting that a purchaser at a public sale has a duty to determine the physical extent of the property offered for sale); <u>Wilcox v. Willard Shopping Ctr. Assocs.</u>, 579 A.2d 130, 134 (Conn. Ct. App. 1990) (affirming the trial court's order approving the forfeiture of $100,000 deposit

made by the successful bidders at a partition sale in spite of the bidders' claims of defects in the condition of the property which were unknown to them when they submitted their bid); Janower v. F.M. Sibley Lumber Co., 222 N.W. 736, 736-37 (Mich. 1929) (rejecting claims for relief made by purchaser at foreclosure sale based in part upon allegations "that the premises were not clean and out of repair").

## V. CONCLUSION

Based upon the foregoing discussion, we conclude that any arrangement between the parties constituted an attempt at a settlement of the parties' substantive rights as opposed to a mere procedural stipulation. However, whether the parties were moving toward a settlement or a procedural stipulation, we conclude that the parties' discussions did not end in an enforceable agreement. Thus U.S. Bank was not precluded from objecting to Colfin's motion to set aside the foreclosure sale. We also conclude that Colfin failed to establish any grounds for setting aside the foreclosure sale. It follows that the trial court abused its discretion in setting aside the foreclosure sale based upon its finding that U.S. Bank had agreed not to oppose setting aside the sale.

Accordingly, we reverse the trial court's order setting aside the foreclosure sale. On remand, the trial court shall take such action as may be necessary, if any is required, to undo the results of its order.

Reversed and remanded.


KELLY and BLACK, JJ., Concur.