# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-1803
LT Case No. 2021-CA-000403

_____

ZACKARY NEELD,

    Appellant,

    v.

THOMAS COMBS,

    Appellee.

_____

Nonfinal appeal from the Circuit Court for Flagler County.
Christopher A. France, Judge.

Katlin C. Cravatta and Caroline C. Dunkle, of Foley & Lardner
LLP, Orlando, for Appellant.

Brian J. Lee, of Morgan & Morgan, Jacksonville, for Appellee.

February 14, 2025

MacIver, J.

In this automobile negligence action, Zackary Neeld—the
defendant below—("Neeld") appeals a nonfinal Order that
determined that a settlement agreement was unenforceable and
allowed Thomas Combs—the plaintiff below—("Combs") to
withdraw his settlement proposal.

Neeld claims the Order should be reversed because the parties had formed an enforceable settlement agreement, there was no legal basis to set aside the acceptance or allow withdrawal of Combs's settlement proposal, and the trial court's ruling is contrary to the purpose and policy of Florida's settlement statute. We agree.

*Background*

The underlying case stems from a 2017 motor vehicle accident for which Combs asserted a single claim of negligence against Neeld. Combs filed a Notice of Serving Proposal for Settlement and served a Proposal for Settlement on Neeld (the "PFS") pursuant to section 768.79, Florida Statutes (the "settlement statute"), and Florida Rule of Civil Procedure 1.442. Combs proposed to settle all damages against Neeld for the sum of $100,000.

Neeld filed a Notice of Acceptance of Plaintiff's Proposal for Settlement (the "Acceptance") twenty-nine days after the PFS was served on him.

The next day, Combs's counsel sent an email to Neeld's counsel:

> I respectfully believe it should have been obvious from our discussion yesterday when I indicated I assumed our PFS was "for limits" (and also the pre-suit demand from [my colleague] for $275,000), that the $100,000 PFS we served was an error. I ask that you withdraw your acceptance so I can withdraw our PFS and get a corrected one served for the $1 million in limits. . . . There is zero prejudice to the defendant in doing so and clear and incurable prejudice to the plaintiff.

Neeld's counsel replied:

> We will not withdraw our acceptance of your valid Proposal for Settlement. We will forward the settlement draft to you shortly.

A settlement check in the amount of $100,000 was delivered to Combs's counsel.

Four and a half months later, Combs filed a Motion for Voluntary Withdrawal of Erroneously Filed Pleading (the "Motion to Withdraw"), seeking to withdraw the PFS and have the Acceptance set aside. In his motion, Combs explained that the bodily injury benefits under Neeld's policy provided $1,000,000 in available benefits, not $100,000. Combs claimed the error should have been obvious to Neeld, and Combs never authorized a PFS for less than the $1,000,000 limit available under Neeld's policy.

Neeld responded with a Motion to Enforce Settlement Agreement (the "Motion to Enforce"), arguing that a valid settlement agreement was formed and there was no legal basis to withdraw Combs's PFS.

After a hearing on the competing motions, the Court granted Combs's Motion to Withdraw and denied Neeld's Motion to Enforce. This appeal followed.

## *Analysis*

A trial court's application of the law on a motion to withdraw settlement is reviewed de novo. *Dale v. Schaub*, 301 So. 3d 1000, 1002 (Fla. 4th DCA 2020). A trial court's order declining to enforce a proposal for settlement also is reviewed de novo. *Publix Super Mkts., Inc. v. Alford*, 354 So. 3d 601, 603 (Fla. 5th DCA 2022).

### I. *A binding settlement agreement was formed.*

The Florida settlement statute requires that a proposal for settlement must (a) be in writing and state that it is being made pursuant to the settlement statute; (b) name the party making it and the party to whom it is being made; (c) state with particularity the amount offered to settle a claim for punitive damages, if any; and (d) state its total amount. § 768.79(2), Fla. Stat. (2022); *see also* Fla. R. Civ. P. 1.442(c).

The offer "shall be accepted by filing a written acceptance with the court within 30 days after service." § 768.79(4), Fla. Stat.; *see*

3

*also* Fla. R. Civ. P. 1.442(f)(1). If a plaintiff files an offer of judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, the defendant can be liable for the plaintiff's reasonable costs and attorney's fees incurred from the date of the filing of the demand. § 768.79(1), Fla. Stat.

Once the offer and acceptance are filed, the court has full jurisdiction to enforce the settlement agreement. § 768.79(4), Fla. Stat. The rules further provide that no oral communications shall constitute an acceptance, rejection, or counteroffer. Fla. R. Civ. P. 1.442(f)(1).

This statutory framework, as explained by the Florida Supreme Court in *Suarez Trucking v. Souders*, 350 So. 3d 38 (Fla. 2022), "recognizes a simple and straightforward process in which after a written offer is made under the statute, if an acceptance of that offer is timely filed, an enforceable settlement agreement is thereby created." *Id*. at 41. The court said:

> **Once a proper acceptance—that is, an unqualified acceptance—is filed as specified in the statute, that's it: a settlement contract has been entered to resolve the litigation.** All that remains is for performance of the settlement terms to be carried out. This is the framework established by the statute, and parties desiring to obtain the potential benefit afforded by the statute are bound to operate within its parameters.

*Id*. (emphasis added). The court noted that accepting the position that a valid offer and acceptance under the statute do not constitute an enforceable settlement agreement would "unnecessarily inject incoherence into the law." *Id*. at 43. Regarding communications between the parties, the court said:

> The statutorily required written offer and acceptance are not affected by other communications between the litigants. That understanding of the operation of the statute is clearly reflected in the provision of rule

4

1.442(f)(1) that "[n]o oral communications shall constitute an acceptance, rejection, or counteroffer."

. . . Accordingly, regardless of communications between the parties concerning the offer, absent a withdrawal of the offer in accordance with the statutory provisions, the offer will remain open until the statutory 30-day offer period has passed. From this holding it follows that—whatever may have passed between the parties—an acceptance filed in accordance with the statute before an offer has either been withdrawn or expired will be effective to create a settlement contract based on the terms of the offer.

*Id*. at 43–44.

Here, Combs's PFS was expressly made pursuant to the provisions of section 768.79 and Rule 1.442. It was signed by Combs's counsel, e-filed with the court, and e-served on Neeld's counsel. Neeld timely accepted the PFS in writing, as required by the statute. Combs did not seek to withdraw the PFS until more than four and a half months after Neeld had formally accepted it.

Under *Suarez Trucking*, "that's it." 350 So. 3d at 41. A settlement agreement was formed and to find otherwise would eviscerate the statutory framework by allowing a party to freely escape a statutorily formed settlement agreement.

### II. There was no legal basis to allow withdrawal of the PFS or set aside the Acceptance.

Once timely accepted, a proposal for settlement can be withdrawn or set aside only under certain circumstances, primarily involving statutory rules and procedures.

For example, under the settlement statute and rule there is one mechanism for a party to withdraw a PFS—that is, in writing before the written notice of acceptance is filed. § 768.79(5), Fla. Stat.; Fla. R. Civ. P. 1.442(e). Here, Combs did not withdraw his offer in writing in the twenty-nine days between offer and

5

acceptance; he did not even seek to have the PFS withdrawn until four and a half months after acceptance.

Combs's argument that his attorney did not have the authority to settle his claims for $100,000 is unavailing. Because the PFS was signed and served by counsel and a notice of service of the PFS was filed in the trial court pursuant to section 768.79, objective evidence exists as to Combs's counsel's authority to make the PFS. Neither the statute nor the rule requires the offering party to confirm its counsel's authority to make the proposal for settlement, nor is the receiving party required to confirm such counsel's authority. Nor is there any mechanism for a party receiving a PFS to confirm such authority in the timeframe allowed for acceptance without invading the attorney-client privilege.

Further, Combs offered no evidence of his counsel's lack of authority other than his counsel's own statement. Combs simply asserted in his Motion to Withdraw that he had never authorized a PFS in an amount less than the $1,000,000 in coverage available under the policy. No supporting affidavit of Combs was filed in which he denied giving his counsel the authority to settle for $100,000.

Next, Combs's "meeting of the minds" argument was rejected by the Florida Supreme Court in *Suarez Trucking*, when it emphasized that "'[t]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing.' There must therefore be an objective manifestation by both parties of assent to the same terms." 350 So. 3d at 42 (internal citation and footnote omitted).

There was a clear objective manifestation by both parties of agreement to the same terms. The offer of $100,000 was served and timely accepted pursuant to the settlement statute. No evidence was presented of any lack of authority to make the offer. The terms expressly stated in the PFS formed the agreement and, under *Suarez Trucking,* whether Combs subjectively intended a different amount is irrelevant.

6

Next, Combs argues that the PFS was the product of a unilateral mistake, and so the settlement agreement could be set aside. He claims that a Fourth District case—*Dale v. Schaub*, 301 So. 3d 1000 (Fla. 4th DCA 2020)—is directly on point and controlling on this issue, and because it was not expressly or implicitly rejected by *Suarez Trucking*, it is still good law. But *Dale* predates and conflicts with *Suarez Trucking*.[1] *Dale* is premised on cases that held Florida's settlement statute "is irrelevant" to the formation and enforcement of settlement agreements, and that "the statute and the rule implementing the statute apply only when there has been a rejection of a [PFS] and the case goes to trial resulting in a judgment." *Dale*, 301 So. 3d at 1002 (citing *Baratta v. Bradford Elec., Inc.*, 9 So. 3d 694, 696 (Fla. 4th DCA 2009)); *Sosnick v. McManus*, 815 So. 2d 759, 762 (Fla. 4th DCA 2002). Those authorities also predate and are contrary to *Suarez Trucking*.

In short, once it is formed, the agreement made pursuant to the PFS statute essentially operates as and is enforceable as the equivalent of a "consent judgment."[2] Subsequent to the decision in *Suarez Trucking*, the common law methods for attacking the formation of a contract are not available to unwind those agreements.

---

[1] *Dale* is also distinguishable from the instant case. There the court found no inexcusable negligence because the client provided an affidavit that the PFS was not authorized; the attorney and his paralegal provided affidavits that the unilateral mistake was due to a clerical error; higher offers had previously been rejected; the PFS was accepted immediately and a check issued; and the plaintiff's attorney moved to withdraw the proposal the following day. *Dale v. Schaub*, 301 So. 3d 1000, 1003 (Fla. 4th DCA 2020).

[2] *Mady v. DaimlerChrysler Corp.*, 59 So. 3d 1129, 1131 (Fla. 2011) ("A settlement produced pursuant to Florida's offer of judgment statute. . . is tantamount to a consent judgment.").

REVERSED and REMANDED for further proceedings.

JAY, J., concurs.
BOATWRIGHT, J., dissents with opinion.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Case No. 2023-1803
LT No. 2021-CA-000403

BOATWRIGHT, J., dissents.

The majority holds that a binding settlement agreement was formed pursuant to the provisions of section 768.79, Florida Statutes (2022), Florida's offer of judgment and demand for judgment statute, based on the principles elucidated in *Suarez Trucking v. Souders*, 350 So. 3d 38 (Fla. 2022). I disagree and therefore respectfully dissent because *Suarez Trucking* neither discussed nor decided issues relating to the impact of unilateral mistake or lack of counsel's authority to settle which are central to this appeal.

I.

Appellant ("Neeld") and Appellee ("Combs") were involved in a motor vehicle accident in which Combs claimed Neeld was at fault and caused his injuries. At the time of the accident, Neeld was insured under a policy that provided $1,000,000.00 of bodily injury coverage. Combs filed a pre-suit demand for $275,000.00, which was rejected by Neeld. Subsequently, on June 14, 2022, Combs' legal counsel filed a proposal for settlement ("PFS") per section 768.79 intending the amount to be for the policy limits of $1,000,000.00. However, counsel inadvertently made a scrivener's error and tendered a PFS in the amount of $100,000.00. On July

8

13, 2022, Combs' counsel and Neeld's counsel discussed the PFS via a phone call, as the 30 day time period to accept the proposal under the statute was ready to close. Neeld's counsel stated that the proposed amount was closer to getting the case resolved, at which point Combs' counsel replied, "I don't understand," and indicated that the "proposed amount was for limits." Shortly after the conversation, Neeld's counsel filed a Notice of Acceptance of Plaintiff's Proposal for Settlement (Notice of Acceptance).

The next day, Combs' counsel contacted Neeld's counsel via e-mail and notified her that the $100,000.00 offer was in error. He advised that this should have been evident to her, as he had made verbal statements indicating the offer was for policy limits and a pre-suit offer had been made for $275,000.00. Based on this, he asked her to withdraw the acceptance so that he could withdraw his PFS and provide a corrected one with the intended $1,000,000.00 per the limits of the policy. Combs' counsel indicated that there would be zero prejudice to Neeld in doing so, but there would be clear and incurable prejudice to Combs if Neeld's counsel declined to withdraw the offer. Nonetheless, Neeld's counsel refused to withdraw the Notice of Acceptance and stated that a valid proposal had been made.

Combs' counsel filed a Motion for Voluntary Withdrawal of Erroneously Filed Pleading seeking to withdraw the PFS and have the Notice of Acceptance set aside. He argued in his motion that there was an error in the PFS, as the proposal should have been for $1,000,000.00, rather than $100,000.00, and he did not have authority from his client to settle the claim for $100,000.00. Neeld countered by filing a Motion to Enforce the Settlement Agreement. Neeld alleged under section 768.79 and the principles in *Suarez Trucking* that a valid settlement agreement had been formed. In essence, Neeld argued that once the statutory requirements of section 768.79 were met, any perceived errors or oral communications regarding the offer were irrelevant to the analysis.

A hearing was held on the two motions. At the hearing, Combs' counsel argued that a valid settlement agreement had not been formed, as he did not have authority from his client to settle the case for $100,000.00. Combs' counsel informed the court that

9

he had made a mistake in drafting the PFS, and that the PFS should have been for $1,000,000.00, according to the policy limits, rather than $100,000.00. Although Combs' counsel stated this mistake should have been obvious to Neeld's counsel, he argued that this was a unilateral mistake, and he consequently did not have the legal authority to settle the case for $100,000.00. Neeld's counsel argued that a binding settlement agreement was formed under section 768.79 and the principles of *Suarez Trucking*. Neeld's counsel did not challenge or address whether there was a unilateral mistake or whether Combs' counsel had the legal authority to settle the case, instead stating that the "subjective intent" of legal counsel was "not important." Neeld's counsel further asserted: "What's important is objective manifestation of consent to the same terms, and that's what we have here by an offer in the amount of $100,000.00 and an acceptance of that offer in the same amount." Thus, counsel argued an enforceable settlement agreement had been formed.

The trial court granted Combs' motion, setting aside the Notice of Acceptance and allowing Combs to withdraw the PFS. The trial court stated the ruling was based on considerations of due process and fairness, and then entered an unelaborated order granting Combs' motion and denying Neeld's motion. Neeld did not file a motion for rehearing.

## II.

Combs argues on appeal that a valid settlement agreement was not formed because his legal counsel lacked authority to settle his case for $100,000.00, and his counsel's scrivener's error in drafting the PFS constituted a unilateral mistake, allowing for recission of the agreement. He further argues that *Suarez Trucking* is distinguishable from this case, and the arguments Neeld makes on appeal regarding the insufficiency of the evidence to support the trial court's ruling were not properly preserved. I agree with Combs and therefore would affirm the trial court's ruling.

10

## A.

Regarding Combs' first argument that his counsel lacked legal authority to settle his case, Florida law makes clear that the settlement of a case by legal counsel requires the consent of the client. *Dale v. Schaub*, 301 So. 3d 1000, 1004 (Fla. 4th DCA 2020). The mere employment of an attorney does not give the attorney the implied or apparent authority to compromise the client's cause of action or settle the client's claim. *Collado v. Pavlow*, 951 So. 2d 69, 71 (Fla. 5th DCA 2007). A client may give his attorney special or express authority to compromise his cause of action, but such authority must be clear and unequivocal. *Nehleber v. Anzalone,* 345 So. 2d 822, 823 (4th DCA 1977). Further, "an unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client." *Id.* Florida courts have applied these rules when an attorney files a proposal for settlement. *Schaub*, 301 So. 3d at 1004 (holding that it was proper to strike a notice of acceptance and allow a withdrawal of proposal for settlement when the attorney lacked authority to enter the settlement agreement); *see also Sosnick v. McManus*, 815 So. 2d 759 (Fla. 4th DCA 2002). Finally, "[a] party seeking to enforce a settlement agreement bears the burden of showing that an attorney for the opposing party had the clear and unequivocal authority to settle on the client's behalf." *U.S. Bank Nat'l Ass'n v. Rios*, 166 So. 3d 202 (Fla. 2d DCA 2015).

Combs' counsel stated at the hearing below that he did not have the authority to settle his client's case for $100,000.00. This statement alone was sufficient to show that Combs' counsel lacked the legal authority to settle the matter based on the error in the PFS. Although Combs' counsel did not give these statements under oath, Neeld's counsel did not raise any evidentiary objection before the trial court. In fact, Neeld did not challenge that Combs' counsel lacked the legal authority to settle the case at the amount in dispute. Further, Neeld never presented any evidence to meet his burden of showing that Combs' counsel had such authority. Because of this, the trial court was correct in granting Combs' motion.

11

B.

In addition, Combs argues that the error in the PFS constituted a unilateral mistake and that the settlement agreement should therefore be rescinded. Florida law permits a party to rescind a contract based on a unilateral mistake. *Maryland Cas. Co. v. Krasnek*, 174 So. 2d 541 (Fla. 1965); *see also Tilden Groves Holding Corp. v. Orlando/Orange Cnty. Expressway*, 816 So. 2d 658, 661 (Fla. 5th DCA 2002). However, rescission is improper where the mistake results from an inexcusable lack of due care, or unless the other party has so detrimentally relied on the contract such that it would be inequitable to order rescission. *Id.*

In this regard, a clerical or scrivener's error in a settlement offer can constitute a unilateral mistake which will authorize the rescission of the settlement agreement. *Florida Ins. Guar. Ass'n, Inc. v. Love*, 732 So. 2d 456 (Fla. 2d DCA 1999); s*ee also Schaub*, 301 So. 3d at 1004. In *Love*, counsel for the Loves submitted an offer to settle their auto accident case in the amount of $210,000.00. 732 So. 2d at 456. The insurance company rejected the offer and mistakenly countered at $215,000.00 rather than $115,000.00. The Loves accepted the $215,000.00 offer and the insurance company sought to rescind the agreement based on a unilateral mistake. The appellate court ruled that rescission was an appropriate remedy; and even though the error certainly involved some degree of negligence, it did not support a finding of an inexcusable lack of due care. *Id.* at 457.

Initially, it should be evident that Neeld's counsel knew of the mistake before accepting the offer. The pre-suit offer in the case was $275,000.00. When Combs' counsel contacted Neeld's counsel, she stated that the proposed amount was closer to getting the case resolved; to which Combs' counsel replied, "I don't understand," and indicated that the "proposed amount was for limits," which was $1,000,000.00 and not $100,000.00. Immediately after the call, Neeld's counsel filed her Notice of Acceptance, capitalizing on the mistake of her opposing counsel. Combs' counsel contacted her the next day about the error, and although he was correct when he stated this error should have been evident to her, she ultimately refused to withdraw the Notice of Acceptance.

12

Although the issue of mutual mistake is briefly mentioned on appeal, the focus of Combs' argument below and in his answer brief is that a unilateral mistake occurred and thus, rescission of the agreement is appropriate. I agree with Combs. Combs articulated to the trial court that a drafting error had occurred. Clearly there was some degree of negligence involved on behalf of Combs' legal counsel. However, it does not appear to rise to the level of inexcusable lack of due care and is closely on point with the *Love* case. Nor was there any evidence that Neeld so detrimentally relied on the contract that it would be inequitable to order rescission. Once again, Neeld's counsel never challenged Combs on this point or argued that there was not a unilateral mistake. As such, the trial court was correct in its ruling.

C.

The crux of Neeld's argument below and on appeal is that a settlement agreement established under section 768.79 is formed solely on the statutory elements found in section 768.79, and the common law rules to form a contract or set aside a contract are inapplicable. Neeld relies on the principles set forth in the Florida Supreme Court's opinion in *Suarez Trucking* to support his argument. The majority opinion adopts Neeld's position. I disagree with Neeld's argument, as the decision in *Suarez Trucking* is premised upon facts and arguments that are distinguishable from those here. In addition, the Court in *Suarez Trucking* did not rely only on the statutory requirements of section 768.79 but also relied on common law rules of contract formation in reaching its decision. As result, I would not expand *Suarez Trucking* to encompass the facts of this case.

*Suarez Trucking* involved a suit against a trucking company (Suarez Trucking) for injuries to the plaintiff (Souders) arising from an automobile accident involving one of Suarez Trucking's dump trucks. *Suarez Trucking v. Souders*, 311 So. 3d 263, 265 (Fla.

13

2d DCA 2020)[3]. Once the complaint was filed, Souders' workers' compensation carrier filed a notice of lien against any settlement, judgment, or verdict obtained by Souders so as to recover any benefits previously paid to him. *Id.* at 266. Subsequently, Souders sent a PFS in the amount of $500,000.00 to Suarez Trucking. *Id.* Upon receipt of the offer, counsel for Suarez Trucking contacted Souders' attorney to request that the settlement include the satisfaction of the worker's compensation carrier lien from the proceeds of the $500,000.00. Souders' attorney refused the request. *Id.* At that point, rather than rejecting the proposal, Suarez Trucking filed a notice of acceptance of the PFS. *Id.*

Nevertheless, Suarez Trucking, intent upon addressing the lien, issued a $500,000.00 settlement check but made it payable to Souders, his attorneys, and the workers' compensation carrier. *Id.* Counsel for Souders then advised Suarez Trucking that inclusion of the workers' compensation carrier was not contemplated by the essential terms of the PFS and that a valid settlement agreement had not been reached. *Id.* Suarez Trucking subsequently sought to reissue the check payable to Souders only. However, Souders responded that he was no longer interested in resolving the case as he considered the issuance of the check payable to the workers' compensation carrier a rejection of the proposal for settlement. Suarez filed a motion to enforce the settlement agreement, and the trial court denied the motion finding that there was not a meeting of minds as to the essential terms of the contract. *Id.* The Second District affirmed on that basis. *Id.* at 272.

On review, the Florida Supreme Court held that a valid settlement agreement had been formed based on the framework of an offer and acceptance that was established by section 768.79 as well as basic contract principles. *Suarez Trucking*, 350 So. 3d at 38. The Court noted that section 768.79 sets forth a framework that recognizes "a simple and straightforward process in which after a written offer is made under the statute, if an acceptance of that offer is timely filed, an enforceable settlement agreement is

---

[3] The Second District's opinion (311 So. 3d 263) more fully explains the underlying facts that became the basis of the Florida Supreme Court's opinion and thus, they are referenced here.

thereby created." *Id.* at 42. The statute also provides a similar method for withdrawing an offer, which must be done in writing and served before a written acceptance is filed. *Id.* Further, the court explained that the written offer and acceptance under section 768.79 are not affected by other communications between the litigants per Florida Rule of Civil Procedure 1.442(f)(1), which provides that "[n]o oral communications shall constitute an acceptance, rejection, or counteroffer." *Id.*

In determining whether a settlement had been formed, the Court analyzed these statutory principles in accordance with the basic rules of contract law. *Id.* The Court stated it has long been established that "[i]n order to create a contract, it is essential that there should be a reciprocal assent" to the contract terms. Further, the Court noted that the "general rule at common law" is simply "that [an] acceptance must comply with [the] terms of [the] offer." *Id.* at 43.

Based on these principles, the Court correctly held that once Suarez Trucking accepted the terms of the PFS, by filing the notice of acceptance agreeing to the settle for the amount of $500,000.00 (without the added condition of settling the workers' compensation carrier's lien), a valid settlement agreement was formed, as the parties had mutually assented to the terms of the agreement. *Suarez Trucking* is different from the case on appeal, as the plaintiff in *Suarez Trucking* claimed that when he received the check it was not in accord with the agreement, and therefore, the agreement was void. The Court noted that the Second District's decision was in express and direct conflict with the decision of the Fourth District in *Cirrus Design Corp. v. Sasso*, in which the Fourth District held that the filed acceptance of an offer under section 768.79 resulted in the formation of a substituted agreement and performance thus was not necessary to the formation of the settlement contract. 95 So. 3d 308, 312 (Fla. 4th DCA 2012). As the Florida Supreme Court aptly emphasized, the trial court and Second District conflated acceptance of the PFS with performance. *Suarez Trucking*, 350 So. 3d at 41. The fact that Suarez Trucking issued the check with different terms than those which were agreed upon was immaterial to whether there was a valid contract formed based on mutual assent to the terms; and instead was relevant to whether there had been a breach of those

15

terms. As a result, the Court properly held there was a valid agreement—and approved the conflict decision in *Cirrus*—but remanded the case for a review of the issue regarding a potential breach of the agreement. *Id.* at 44.

The situation in the underlying case is entirely different. This case is about whether there was a valid offer made by Combs. His claim was that there was not a valid offer based on a lack of authority and/or a unilateral mistake. As *Suarez Trucking* emphasizes, there is still a requirement of a "**valid** offer and acceptance" to form a settlement agreement. *Id.* at 43 (emphasis supplied).

Although the majority opinion in the underlying case states that *Suarez Trucking* does away with any common law method to attack the formation of a contract or remedy to set aside a settlement agreement under section 768.79, I find no discussion of this anywhere in *Suarez Trucking*. In fact, as mentioned supra, the Court analyzed the case not only in light of section 768.79, but additionally under "general rules of contract law." The Court spent a substantial portion of its opinion addressing contract formation under the common law and not just in relation to section 768.79; and, notably, it approved the Fourth District's opinion that settlement agreements in this context are "governed by the same legal principles applied to other contracts." *Cirrus,* 95 So. 3d at 312. As a result, it does not appear that *Suarez Trucking* dispenses with common law principles of contract formation in the context of section 768.79 or the ability to set aside a settlement agreement based on the procedural mechanism utilized in this case.

D.

Finally, Neeld argues for the first time on appeal that notwithstanding his argument under *Suarez Trucking* that a settlement agreement was formed, there were no affidavits or properly sworn evidence to support the trial court's ruling setting aside the PFS and Notice of Acceptance based on Combs' argument of lack of authority and unilateral mistake. The majority adopts this position. However, this argument was never raised below, either in Neeld's pleadings or at the hearing regarding this matter; nor did Neeld file a motion for rehearing raising these issues.

16

Further, though Combs' counsel gave unsworn testimony at the hearing, Neeld's counsel did not object to this testimony. In fact, at the hearing below, Neeld's counsel never challenged Combs' counsel's arguments that there was a unilateral mistake and that Combs' counsel lacked authority to enter the settlement. Neeld solely argued in his pleadings and at the hearing below that once the PFS was made and accepted under section 768.79, a valid settlement agreement had been formed under the principles of *Suarez Trucking*. Whether there was a unilateral mistake or Combs' counsel lacked authority to enter the settlement agreement was irrelevant to the analysis based on Neeld's arguments.

Florida courts have consistently held that it is impermissible to take a position on appeal that is inconsistent with that taken below. *Held v. Held,* 617 So. 2d 358, 360 (Fla. 4th DCA 1993). "The rule of preservation, which is a keystone in our appellate process, dictates that '[i]n the absence of fundamental error, an appellate court will not consider an issue that has been raised for the first time on appeal.'" *Vorbeck v. Betancourt,* 107 So. 3d 1142, 1147 (Fla. 3d DCA 2012) (quoting *Keech v. Yousef,* 815 So. 2d 718, 719 (Fla. 5th DCA 2002)). To preserve an issue for appeal, "a party must make a timely, contemporaneous objection." *Cabrera v. Outdoor Empire, Inc.,* 134 So. 3d 573, 576 (Fla. 1st DCA 2014) (citing *Aills v. Boemi,* 29 So. 3d 1105, 1108 (Fla. 2010)). "For an issue to be preserved for appeal, it must be presented to the lower court and the specific legal argument or ground to be argued on appeal must be part of that presentation." *Id.* (citing *Anderson v. Wagner, DPM,* 955 So. 2d 586, 590 (Fla. 5th DCA 2006)). Finally, another preservation principle applies where a final order addresses substantive issues or reaches legal conclusions that have not been previously raised or challenged, and if this occurs, a party must file a motion for rehearing to preserve the alleged errors for appellate review. *State v. Clark*, 373 So. 3d 1128, 1131 (Fla. 2023).

The arguments regarding unilateral mistake, Combs' counsel's lack of authority to enter into the PFS, and the fact that Combs' counsel's testimony at the hearing was unsworn, are raised solely for the first time on appeal and are thus unpreserved. Neeld could have filed a motion for rehearing to address these issues but failed to do so.

III.

I would affirm the trial court's decision. Combs' legal counsel lacked the authority to enter the settlement agreement at issue and thus, a valid offer was not made. In addition, the offer accepted by Neeld was born of a scrivener's error which constituted a unilateral mistake and should void the settlement agreement. The majority noted a concern that accepting the position that a "valid" offer and acceptance under the section 768.79 does not constitute an enforceable settlement agreement would "unnecessarily inject incoherence into the law." I agree with the majority. However, for the reasons outlined above, I do not believe the offer was "valid" in this case, and thus, this should not be the concern. The concern should be subjecting Combs to an agreement where he did not authorize the specific terms at issue. This, too, would "unnecessarily inject incoherence into the law." Further, this would allow a party or counsel to capitalize on an obvious mistake by the other party and could potentially encourage "gotcha tactics." As our court has stated, "gotcha! maneuvers" will not be permitted to allow one to succeed in litigation. *State v. Zachary,* 181 So. 3d 1204, 1206 (Fla. 5th DCA 2015); *see also Andreaus v. Impact Pest Mgmt.*, 157 So. 3d 442, 445 (Fla. 2d DCA 2015) (trial courts should not reward gotcha tactics in litigation); *Salcedo v. Asociacion Cubana, Inc.,* 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979) (courts will not allow the practice of the 'gotcha!' school of litigation to succeed); *Harley v. Lopez,* 784 So. 2d 447, 448 (Fla. 3d DCA 1999) (refusing to reward "gotcha" tactics, which have been "long abhorred by this court").

Finally, I do not read *Suarez Trucking* as barring the arguments made by Combs. It seems untenable that Combs should be held accountable for his legal counsel's mistake when he did not authorize the settlement at issue. As the trial court ruled, this is a matter of "due process." As a result, I would affirm the trial court's decision and therefore, I respectfully dissent.